### The MAGNAVOX COMPANY OF TENNESSEE

v.

### INTERNATIONAL UNION OF ELECTRICAL, RADIO AND MACHINE WORKERS, IUE, AFL–CIO, its Affiliated Local Union No. 738 and Roy E. Whaley.

#### Civ. A. No. 6282.

United States District Court
E. D. Tennessee, N. D.

June 28, 1968.

N. R. Coleman, Jr., Milligan, Silvers & Coleman, Greeneville, Tenn., for plaintiff.

Thomas W. Overall, Greeneville, Tenn., for defendants.

## MEMORANDUM .

ROBERT L. TAYLOR, Chief Judge.

Plaintiff, The Magnavox Company of Tennessee, seeks to set aside the award of an Arbitrator modifying the discharge of its former employee, Roy E. Whaley. The parties agree that there is no dispute over the facts and each party has moved for summary judgment.

The plaintiff (hereinafter called the Company) originally filed suit in the Chancery Court of Jefferson County, Tennessee. Defendant International Union of Electrical, Radio and Machine Workers, IUE, AFL–CIO, its affiliated Local Union No. 738 (hereinafter called the Union) removed the suit to this Court, basing jurisdiction on 28 U.S.C. § 1441 and 29 U.S.C. § 185.

The parties entered into a collective bargaining agreement which became effective October 17, 1966, and which will terminate June 30, 1969.

A narration of some of the facts will give a better understanding of the circumstances under which Whaley was discharged.

Defendant Whaley went on sick leave for hypertensive vascular disease on August 22, 1967, and was treated by Dr. David C. Cawood. On October 2, 1967, defendant returned to the plant with a note from Dr. Cawood stating:

"October 2, 1967.

Mr. Roy Whaley is under our care and treatment and will be able to return to work October 2, 1967. He will not be able to work around intense heat such as a furnace room or do bending.

(signed) David C. Cawood, M. D."

Since defendant's job required work in the "oven room" where temperatures ranged around 120 degrees, the Company refused to allow defendant the privilege of returning to work. The following day defendant returned with another letter from Dr. Cawood which stated:

"October 3, 1967.

Roy Whaley is under our care and treatment. He may return to his regular work as Inspector October 2, 1967.

(Signed) David C. Cawood, M. D."

As a precaution the Company sent defendant to the plant physician, Dr. Frank L. Milligan, who found him available for normal work. Consequently, defendant returned to work on October 4, 1967.

While on the job the first day, defendant was ordered to help pull some cabinets from an oven. He refused, stating that he had a doctor's statement advising him not to work in extreme heat. After refusing a direct order three times, defendant was suspended and later discharged. A grievance was then filed.

When the Union and Company could not reach an agreement, the dispute was submitted to arbitration before Ralph Roger Williams, who found that the discharge of defendant was without just and lawful cause under the Agreement. Arbitrator Williams then modified the Company's disciplinary action from a discharge to a layoff. He further ordered defendant restored with full seniority and other rights, but without back pay.

The question for determination is whether the Arbitrator acted within the

scope of his authority and within the scope of the provisions of the collective bargaining agreement in reinstating Whaley as an employee of the Company.

██ The Court recognizes that the so-called "Steelworkers Trilogy" cases places restrictions on judicial review of an arbitrator's decision and that it was held in those cases that the court cannot inquire into the merits of the case in passing on the correctness of the arbitrator's decision. It is further recognized that the employer and the Union are free to make the arbitration agreement as broad or narrow as they choose and that the court should ordinarily refrain from interpreting the substantive provisions of the contract. United Steelworkers of America v. American Manufacturing Company, 363 U.S. 564, 80 S.Ct. 1343, 4 L.Ed.2d 1403 (1960) ; United Steelworkers of America v. Warrior and Gulf Navigation Company, 363 U.S. 574, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960) ; United Steelworkers of America v. Enterprise Wheel and Car Corporation, 363 U.S. 593, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960).

It is the policy of the Government to promote industrial stabilization through the collective bargaining agreements. Arbitration is a major factor in achieving stabilization. In Steelworkers v. Warrior and Gulf Navigation Company, supra, p. 581, 80 S.Ct. p. 1352, the Court stated:

"Apart from matters that the parties specificallly exclude, all of the questions on which the parties disagree must therefore come within the scope of the grievance and arbitration provisions of the collective agreement. The grievance procedure is, in other words, a part of the continuous collective bargaining process. It, rather than a strike, is the terminal point of a disagreement."

██ Our inquiry is, therefore, restricted to the question of whether the Arbitrator's decision in this case is within the provisions of the collective bargaining agreement. An arbitration agreement is a matter of contract, and the arbitrator is bound by its provisions. John Wiley and Sons, Inc. v. Livingston, 376 U.S. 543, 84 S.Ct. 909, 11 L.Ed.2d 898 (1964).

In Steelworkers v. Enterprise Corporation, supra, the Court said at page 597, 80 S.Ct. at page 1361:

" * * * Nevertheless, an arbitrator is confined to interpretation and application of the collective bargaining agreement; he does not sit to dispense his own brand of industrial justice. He may of course look for guidance from many sources, yet his award is legitimate only so long as it draws its essence from the collective bargaining agreement. When the arbitrator's words manifest an infidelity to this obligation, courts have no choice but to refuse enforcement of the award."

Article IX(2) (3) (4) of the Agreement provides:

"2. An arbitrator under this Agreement shall not have the right to:

(a) Alter and amend any provision of this contract or add to or subtract from it.

(b) Substitute his judgment for the employer's in matters which are solely Management's functions and rights under this contract.

(c) To consider, rule or enter any award with respect to disciplinary action imposed upon an employee for refusal or failure to perform assigned job tasks, except where the employee can positively establish that the performance of such task would have created a serious health hazard to him.

"3. Arbitrators construing or applying this contract shall be governed by the following:

(a) The express provisions of this contract.

(b) Applicable federal or state laws.

(c) The intent of the parties as provided in the language of the contract.

"4. The parties specifically veto recourse by arbitrators hereunder to such criteria as:

(a) Alleged practices of the industry.

(b) Alleged industrial common law or alleged common law of the industry."

Article II provides:

## "MANAGEMENT RESPONSIBILITY

"The right to hire, layoff, and, discharge employees for just and lawful cause; and the management, disposition, and number of working forces, the right to contract out work, the right to make reasonable assignments of jobs; to determine the products to be manufactured, processed or handled by the employees, to establish production schedules, methods, processes and means and ends; to determine its general business practice and policy; to open new units assembly lines, departments and operations and to terminate or close them; to make promotions to supervisory or executive positions; to increase or decrease the working force are among the sole prerogatives of the Company; provided, however, that this section will not be used to discriminate against the union and membership thereof and also this section will not in any way abrogate or interfere with the employee's rights under the terms of this Agreement, including the use of the grievance and arbitration procedure."

Article XIII(10) provides:

"10. If any employee or group of employees feels that any order of a supervisor is unreasonable or unjust, the employee or group of employees affected will comply but may if they choose institute a grievance over the matter."

It is to be observed from the quoted language of Article IX(2) (c) that the Arbitrator had no power to enter any award with respect to disciplinary action imposed for refusal to perform an assigned task unless the performance of the task created a serious health hazard to Whaley. The Arbitrator found that there was no such health hazard:

"In failing to carry out his Supervisor's order, the Grievant based his refusal on what, to him, may have been a valid reason. The medical testimony, however, leads me to believe that there was little if any cause for him to be alarmed. He had become dizzy and 'swimmy-headed' on prior occasions in the heat of the drying oven, but he had been absent on sick leave for several weeks and his condition was considerably improved when he returned to work. Both physicians—his own and the Company's—released him to full duty. Both doctors gave written statements to the Company that Grievant was able to perform full duty. And while the 'full release' of the Grievant's physician may have been prompted by statements made to him over the telephone by a Company official, the Grievant's doctor did not testify at the hearing that the work definitely would have been a serious health hazard to the Grievant. Lacking medical evidence, we, therefore must assume that in actuality the work would not have been a 'serious health hazard' to the Grievant."

The findings of the Arbitrator show that work in the oven room was part of defendant Whaley's job, and that the management had the right to discipline him for failure to perform the assigned task.

The Arbitrator recognized that disciplinary action by the Company was appropriate, but was of the opinion that "discipline" as used in IX(2) (c) did not include the right to discharge. We disagree. The Arbitrator observed that Whaley believed that the work that he was ordered to do involved a "serious health hazard" and that a discharge of him for failure to carry out the Com-

pany's order was too severe. This conclusion ignores the hereinbefore quoted provisions of Article IX of the Agreement which prohibits the Arbitrator from amending the Agreement, from substituting his judgment for the Company's in management functions and from entering any award with respect to disciplinary action imposed upon an employee for refusal or failure to perform assigned work, except where the employee positively established that the performance of such task created a serious health hazard to him. The conclusion also ignores Article IX, Section (3) of the Agreement which states that the Arbitrator shall be governed by the express provisions of the contract and the intent of the parties as provided in the language of the contract and also Article II which gives management the right to discharge employees for just and lawful cause. The conclusion likewise ignores Article XIII, Section (10) which provides in effect that if any employee feels that any order of a supervisor is "unreasonable or unjust, the employee * * * affected will comply but may" if he chooses, institute a grievance over the matter. Health hazard is not used in this provision of the contract as an exception to discipline by the Company for an employee not following its orders.

The question in the case of Torrington Co. v. Metal Products Workers Union Local 1645, 362 F.2d 677 (C.A.2, 1966) was similar to that in the present case. The union had filed a grievance when the employer discontinued the practice of granting time off with pay to those employees who requested time to vote. Throughout the contract negotiations between the employer and the union the employer persistently repeated its intention not to grant this benefit. The contract contained no provision granting this right. The arbitrator found that such right still existed, and the issue was whether the arbitrator exceeded his authority by going outside the terms of the contract by including an implied benefit. The Court said, p. 680:

" * * * Although the arbitrator's decision on the merits is final as to questions of law and fact, his authority is contractual in nature and is limited to the powers conferred in the collective bargaining agreement. For this reason, a number of courts have interpreted *Enterprise Wheel* as authorizing review of whether an arbitrator's award exceeded the limits of his contractual authority. See H. K. Porter Co. v. United Saw, File & Steel Prods. Workers, 333 F.2d 596 (3 Cir. 1964); Truck Drivers & Helpers Union Local 784 v. Ulry-Talbert Co., 330 F.2d 562 (8 Cir. 1964); I. A. M. v. Hayes Corp., 296 F.2d 238, 242–243 (5 Cir., 1961). * * * we have plainly intimated that the arbitrator's authority to render a given award is subject to meaningful review. * * * "

\* \* \* \* \* \*

" * * * Therefore, we hold that the question of an arbitrator's authority is subject to judicial review, and that the arbitrator's decision that he has authority should not be accepted where the reviewing court can clearly perceive that he has derived that authority from sources outside the collective bargaining agreement at issue. See Textile Workers Union of America v. American Thread Co., 291 F.2d 894 (4 Cir., 1961)."

In footnote 6, the Court observed:

" * * * The question of the arbitrator's authority is really one of his contractual jurisdiction, and the courts cannot be expected to place their stamp of approval upon his action without making some examination of his jurisdiction to act. As stated above, we think more exhaustive judicial review of this question is appropriate after the award has been made than before the award in a suit to compel arbitration; in this way, the court receives the benefit of the arbitrator's interpretive skills as to the matter of his contractual authority. * * * "

The Court then pointed out that limited judicial review will strengthen rather

than undermine the finality of labor arbitration.

"Far from having the disruptive effect upon the finality of labor arbitration which results when courts review the 'merits' of a particular remedy devised by an arbitrator, we think that the limited review exercised here will stimulate voluntary resort to labor arbitration and thereby strengthen this important aspect of labor-management relations by guaranteeing to the parties to a collective bargaining agreement that they will find in the arbitrator not a 'philosopher king' but one who will resolve their disputes within the framework of the agreement which they negotiated."

A question very similar to the one involved in the present case was before the Court in the case of Teamsters Local 784 v. Ulry-Talbert Company, 330 F.2d 562 (C.A.8, 1964). In that case the arbitrator ordered an employee reinstated after the company had discharged him. The arbitrator, in an agreement similar to the one in the present case, was empowered to find only that an employee had been guilty of conduct justifying discipline or that the employer's complaint against the employee was not supported by the facts. The Court held that in going further and assessing the penalty as excessive, the arbitrator attempted to substitute his judgment for that of the management which was expressly prohibited by the contract. This same prohibition is found in Article IX, Section (2) of the Agreement in the present case.

█ Counsel furnished the Court with a copy of the opinion of District Judge Woodrow W. Jones of the Western District of North Carolina in The Magnavox Company of Tennessee v. International Woodworkers of America, decided March 11, 1968. The provisions of the contract were identical or almost identical to the provisions in the present case. We have reached the same conclusions that were reached in that case. See District 50, United Mine Workers v. Chris-Craft Corp., 385 F.2d 946 (C.A.6, 1967); H. K. Porter Co. v. United Saw, File & Steel Prod. Wkrs., 333 F.2d 596 (C.A.3, 1964); Local 217, International Union of Electric, Radio & Machine Workers v. Holtzer-Cabot Corp., 277 F.Supp. 704 (D.C. 1967); Ludwig Honold Mfg. Co. v. Fletcher, 275 F.Supp. 776 (D.C.1967).

The opinion and award of the Arbitrator is vacated and set aside and the motion for summary judgment in favor of the plaintiff is granted. A similar motion of the defendant is denied.