DISTRICT 50, UNITED MINE WORK-
ERS OF AMERICA and Local Union
No. 15418, District 50, United Mine
Workers of America

v.

TENN GLAD INDUSTRIES, INC.

Civ. A. No. 6445.

United States District Court
E. D. Tennessee, N. D.

Feb. 7, 1969.

Wilkes T. Thrasher, Jr., Chattanooga, Tenn., for plaintiff.

Hugh Tapp, Knoxville, Tenn., for defendant.

## MEMORANDUM

ROBERT L. TAYLOR, Chief Judge.

This is an action under Section 301 of the Labor Management Relations Act of 1947, 29 U.S.C. § 185, in which the plaintiff petitions the Court to confirm and enforce the award of an arbitrator.

Since there is no material issue of fact, the case will be determined on motions for summary judgment which have been entered by both parties.

The plaintiff, hereinafter referred to as the Union, represents the employees of the defendant, hereinafter called the Company. On November 5, 1964 the Union and the Company entered into a written collective bargaining agreement which was in force when the controversy behind this action arose. The agreement was to remain in force until November, 1967 or from year to year thereafter unless either of the parties notified the other that changes were to be sought.

The agreement includes both a no-strike clause and a procedure for settling grievances arising under the agreement. The fifth and sixth steps in that procedure provide for arbitration by an impartial umpire. The agreement stated, "The decision of the umpire shall be final."

In 1967 a dispute arose concerning the interpretation of the wages provision, Article VI of that agreement. Section D of that article sets the starting wage for new employees at $1.25 an hour. Section C provides the following:

"Effective on or after November 5, 1966, new employees completing forty (40) working days shall receive five cents (5¢) per hour increase and upon completing eighty (80) working days an additional five cents (5¢) per hour increase and upon completing one-hundred and twenty (120) working days shall receive an additional five cents (5¢) per hour increase."

More than a year after the agreement was signed Congress amended the Fair Labor Standards Act, 29 U.S.C. § 206, by increasing the minimum wage from $1.25 to $1.40 effective February 1, 1967, and to $1.60 effective February 1, 1968. The effect of the increases was to make the starting wage for the Company's employees $1.40, whereas the agreement specified that the $1.40 rate should not be reached until after three raises at forty day intervals.

When the Company began paying the new minimum wage, it stopped granting the five cent raises to new employees, apparently on the theory that since the agreement provided a maximum rate of pay of $1.40, the effect of the statutory change was merely to hasten the time when that maximum rate was to be paid. The union contended that the raises were to be made independently of the starting base rate.

Pursuant to the grievance procedure in August, 1967 Mr. Gerald Barrett was appointed umpire. After a hearing in October he announced his award on November 24, 1967. He concluded that the Union was correct in its interpretation of the agreement that the agreement required periodic raises from the starting wage which was increased by law to $1.40 after February 1, 1967.

The Company failed to comply with the arbitrator's award by refusing to grant the raises other than to comply with the statutory change. The Union filed this suit to enforce the award in October, 1968.

In its motion for summary judgment, the Company stated that the award could not be confirmed by the Court because it was so contrary to the collective bargaining agreement that it was arbitrary and capricious. In its brief, the Company further asserted that the basis of the award was not the interpretation of the agreement, but was an external source, and that the award could not, therefore, be enforced under the principle of Torrington Co. v. Metal Products Workers Union Local 1645, 362 F.2d 677 (C.A.2, 1966).

The Court notes that the award is not challenged on the grounds of fraud, bias or misconduct on the part of the arbitrator. See, 9 U.S.C. § 10 and Commonwealth Coatings Corp. v. Continental Cas. Co., 393 U.S. 145, 89 S.Ct. 337, 21 L.Ed.2d 301 (1968).

In the opinion of this Court, the decision of the arbitrator was not

arbitrary or capricious, but rather appears to be a reasonable interpretation of the agreement. However, it is not the function of the Court to pass on the merits of the disputed interpretations, and the award would have to be enforced even if the Court would have construed the contract differently. United Steelworkers of America v. Enterprise Wheel & Car Corp., 363 U.S. 593, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960); Smith v. Union Carbide Corp., 350 F.2d 258 (C.A.6, 1965). In a suit under Section 301 of the Labor Management Relations Act to enforce the award of an arbitrator which interprets a collective bargaining agreement the inquiry of the Court is limited fundamentally to determining if the parties agreed to arbitrate the matter and whether the arbitrator's award draws its essence from the agreement.

■ Arbitration is a matter of contract, and a party cannot be required to submit to arbitration any dispute which he has not agreed to submit, nor is he bound by an award which he did not give the arbitrator the power to make. United Steelworkers of America v. Warrior & Gulf Navigation Co., 363 U.S. 574, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960); District 50, United Mine Workers of America v. Chris-Craft Corp., 385 F.2d 946 (C.A.6, 1967); Magnavox Co. of Tennessee v. International Union of Electrical, R. & M. Workers, 287 F. Supp. 47, a case recently decided by this Court.

■ The other fundamental inquiry in a case to review an arbitrator's award was stated as follows in United Steelworkers of America v. Enterprise Wheel & Car Corp., supra, at page 597, 80 S.Ct. at page 1361:

"Nevertheless, an arbitrator is confined to interpretation and application of the collective bargaining agreement; he does not sit to dispense his own brand of industrial justice. He may of course look for guidance from many sources, yet his award is legitimate only so long as it draws its essence from the collective bargaining agreement. When the arbitrator's words manifest an infidelity to this obligation, courts have no choice but to refuse enforcement of the award."

That holding has been applied by the Sixth Circuit in Baldwin-Montrose Chem. Co. v. International Union, United Rubber, Cork, Linoleum and Plastic Workers of America AFL-CIO, 383 F.2d 796 (C.A.6, 1967); and Kroger Co. v. International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America, Local No. 661, 380 F.2d 728 (C.A.6, 1967). See Chambers v. Beaunit Corp., 404 F.2d 128.

Torrington Co. v. Metal Products Workers, supra, purports to be an application of the principle of the *Enterprise Wheel* decision. The Second Circuit held, with one dissent, that an award would not be enforced because the arbitrator drew his conclusion not from interpreting the contract, but from prior practice in the plant. The Court also observed that the subject matter of the arbitration was clearly excluded from the collective bargaining agreement.

The defendant has not in this action questioned his agreement to arbitration upon the subject matter. The Company does contend that as in the *Torrington* case the arbitrator relied on matters external to the agreement. The contention is based partly on the arbitrator's application of the minimum wage law to the collective bargaining agreement.

The Court concludes that the arbitrator did draw his decision from the essence of the collective bargaining agreement. The agreement provided in one section for the starting hourly rate and in another for five cent hourly pay raises after a starting worker has completed 40 working days, after 80 days, and after 120 days. His consideration of the change in the statutory starting wage was certainly proper since it clearly affected both sections of the agreement. Although the Company might reasonably have concluded that the effect was to eliminate the need to give the raises, it may not be said that the arbitrator man-

ifested an infidelity to the essence of the agreement.

The arbitrator found that neither party to the bargaining in 1964 contemplated a change in the minimum wage laws. The same type of uncontemplated change in circumstances presented to the Sixth Circuit in Baldwin-Montrose Chem. Co. v. International Union, United Rubber, Cork, Linoleum and Plastic Workers of America AFL-CIO, 383 F.2d 796 (1967) the precise issue before the Court. The collective bargaining agreement provided vacation pay to workers who worked thirty days after June 1, but the plant shut down before that date. In light of the uncontemplated shutdown, the arbitrator awarded the vacation pay to workers who did not work the entire specified thirty days. The Court held, citing *Enterprise Wheel*, that the award should be enforced since it could not be said that the words of the arbitrator manifested an infidelity to the essence of the collective bargaining agreement.

From the foregoing it appears that the plaintiff's motion for summary judgment must be granted and the award of the arbitrator confirmed. As the arbitrator found, Article VI section G entitles the defendant's employees covered by that section to three periodic raises of five cents. Coverage extends to new employees since November 5, 1966 through the last effective date of the agreement signed in 1964. The award settles that the raises are to be added to the starting pay required by the minimum wage law from and after the effective date of the statutory changes.

Any further clarification of the award and determination of those individuals covered is a matter for the agreement of the parties and the arbitration process. United Steelworkers of America v. Enterprise Wheel & Car Corp., supra; Smith v. Union Carbide Corp., supra.

The motion of the plaintiff for summary judgment is sustained. A similar motion by the defendant is denied.