**WRIGHT–AUSTIN COMPANY, Plaintiff,**

**v.**

**INTERNATIONAL UNION, UNITED AUTOMOBILE, AEROSPACE AND AGRICULTURAL IMPLEMENT WORKERS OF AMERICA and Local 212 of the International Union, United Automobile, Aerospace and Agricultural Implement Workers of America, Defendants.**

**Civ. A. No. 76–71533.**

United States District Court,
E. D. Michigan, S. D.

Nov. 22, 1976.

Paul H. Townsend, Jr., and Seth M. Lloyd, Dykema, Gossett, Spencer, Goodnow & Trigg, Detroit, Mich., for plaintiff.

William M. Mazey, Detroit, Mich., for defendants.

**MEMORANDUM OPINION AND ORDER**

KEITH, Chief Judge.

Plaintiff, the Wright-Austin Company, has brought this action pursuant to Section 301 of the Labor Management Relations Act, Title 29 U.S.C. Section 185, and the Declaratory Judgment Act, Title 28 U.S.C. Section 2201, seeking a declaratory judgment as to all defendants that the Opinion and Award of Arbitrator Alan Walt, entered on June 22, 1976, in the Matter of the Separation of Joseph Barrow, is null, void and of no effect as a result of Arbitrator Walt having exceeded his authority in entering this Award. The defendants, International Union, United Automobile, Aerospace and Agricultural Implement Workers of America (U.A.W.) and its Local 212, filed a counter Complaint seeking enforcement of the arbitrator's Award. Both parties subsequently moved for Summary Judgment pursuant to Rule 56(c) of the Federal Rules of Civil Procedure. At the hearing on these Motions on October 26, 1976, the plaintiff further requested that the Court decide whether, if the arbitrator's Award is vacated, the parties are still obligated to pay the arbitrator for his services as specified in the collective bargaining agreement.

### I.

The facts in this case are not in dispute. They are reproduced in some detail in the arbitrator's Opinion, which has been made a part of this record. The Court shall quickly summarize them as follows.

Joseph Barrow was employed by Wright-Austin Company from October 31, 1973, until he was terminated on October 9, 1975, for the reasons set forth below. Prior to this termination, he had had a history of absenteeism.[1] On September 10, 1975, he left work early, complaining of stomach pains and nausea. The next day, he was

---

1. Barrow was terminated on June 14, 1974, after a seven day absence during which he failed to notify the Company. When he subsequently submitted a doctor's statement, he was reinstated. On February 14, 1975, he was again terminated for failure to report when absent more than three days. He was reinstated on February 18 with a verbal reprimand and was informed that he should notify the Company within three working days when absent. On April 4, 1975, he received a written warning, and on May 29, 1975, a one week disciplinary suspension, for absenteeism.

examined by his physician, Dr. White, who gave him stomach medication but who did not prescribe other medication at this time. On September 12, a Company representative received a phone call indicating that Mr. Borrow would not be reporting to work until further notice. The following Monday, September 15, the Company personnel director telephoned Mr. Barrow and requested a statement from his doctor as to the nature and duration of his illness.

On September 18, the Company mailed Mr. Barrow a letter indicating that an appointment had been made for him with a Company retained physician, a Dr. Sydney S. Berke, on September 22, 1975, for a physical examination. He was also asked to furnish the Company with a certification of his illness from his doctor. Also on September 18, Mr. Barrow's sister picked up some medical insurance forms for him from the plant, and Barrow went to see Dr. White again. Dr. White completed a medical statement on the insurance form and indicated that Barrow was totally disabled and would be incapacitated for an "undetermined" period of time. The insurance company claims form, including Dr. White's certification, was received by the Company on September 19.

Barrow did not keep his appointment on September 22 with the Company doctor, and another appointment was made for him by the Company for September 29. He was notified of this new appointment by a letter from the Company personnel director, who again requested certification from Dr. White as to the nature and expected duration of his illness.

On September 29, Barrow was examined by Dr. Berke. He advised Dr. Berke of his previous examination and treatment by Dr. White. He advised Dr. Berke that Dr. White had indicated that he would probably be released from medical treatment on October 6, for return to work on October 7. Barrow testified before the arbitrator, and Dr. Berke did not dispute this in his testimony, that Dr. Berke told him to follow the medical regimen prescribed by Dr. White.

Barrow also went to see Dr. White on September 29. Barrow testified that Dr. White advised him to remain off work and that he probably would be able to return to work on October 7.

Barrow did not report to work or notify the Company of his absence on October 7, 8 or 9. On October 9, the personnel director wrote to him and advised him that because he had been absent for three working days without notice to the Company, he lost his seniority status and was being terminated. The Union was also advised of Barrow's termination on this day.

Barrow testified that on October 10, he saw Dr. White again because of a "flu", which had prevented his returning to work. Dr. White filled out on this date an insurance form and a separate medical statement, indicating that Barrow had been under his care and unable to work since September 11, 1975, and stating a diagnosis of influenza and acute sinusitis, but indicating that Barrow would be able to return to work on October 13.

Barrow telephoned the Company on October 10 and told them he was in possession of a medical statement and a completed insurance form, but was told by the Company that he had been terminated the previous day. When Barrow went to the Company on the following Monday, October 13, he produced Dr. White's statement, but he was told that he had lost his seniority as a result of absences for three consecutive working days—October 7, 8 and 9—and would not be reinstated.

## II.

From May 1, 1974, to May 1, 1976, Wright-Austin Company was party to a collective bargaining agreement with Defendant International U.A.W. and Local 212 which recognized Local 212 as the exclusive collective bargaining agent for all production and maintenance employees of the Wright-Austin Company. Joseph Barrow was terminated on October 9 pursuant to Article VIII, Section 2, of the agreement, which provides that:

2. An employee shall lose seniority status

    \*     \*     \*     \*     \*     \*

(c) if he is absent from work for three consecutive working days without notifying the Company, or does not have satisfactory excuse mutually acceptable to the Company and the Union;

    \*     \*     \*     \*     \*     \*

In addition, Article VI, Section 11, of the agreement, relating to seniority and sick leave, states:

11. When an employee's absence from work is due solely to disability resulting from sickness or injury, he will be returned to work in accordance with his seniority as if he had not suffered disability, provided he is able to perform available duties and furnishes medical proof of his fitness to return to work. *Employees shall report disability promptly and at least within three working days, unless his failure to so report is for a reason acceptable to the Company and the Union.* (Emphasis added)

After he was terminated, Barrow instituted a grievance pursuant to Article V of the collective bargaining agreement. The dispute was submitted by the Company and the Union to an arbitrator, pursuant to Step Four of the grievance procedure. Article V, Section 1, para. 3, of the agreement provides that:

The decision of the arbitrator shall be final and binding upon both parties, with a specific provision that the *authority of the arbitrator shall be limited to matters of interpretation and application of the provisions of this agreement.* He shall have no authority to add to, subtract from or change any existing wage rate, or to establish a new wage rate or work standards. *The compensation and expenses of the arbitrator shall be shared and paid equally by the parties.* (Emphasis added)

On January 19, 1976, the Company and the Union submitted the following issue to the arbitrator for his decision:

Whether or not employee Joseph Barrow lost seniority under the provisions of Article VIII, Section 2, of the collective bargaining agreement between the parties, and, if not, whether or not the employee should be reinstated to his employment without loss of seniority and be made whole for all lost earnings.

Arbitrator Walt held an evidentiary hearing on May 11, 1976, at which time testimony was taken. On June 22, 1976, he issued the following Award:

The October 13, 1975, grievance of Joseph Barrow is sustained in part and denied in part. Grievant forthwith shall be reinstated to his former classification with full seniority but without back pay or other benefits.

The plaintiff Company contends that this Award contradicts the factual findings made by the arbitrator, and exceeds his authority under the submission given to him by the parties and under the collective bargaining agreement. The Court feels constrained to agree.

### III.

A federal district court is empowered to determine whether an arbitrator's Award exceeded the limits of his contractual authority, but it does not sit to review the merits of the arbitrator's Award. *Timken Co. v. Local 1123, United Steelworkers of America, et al.*, 482 F.2d 1012 (6th Cir.1973). In the leading case on the subject, *United Steelworkers of America v. Enterprise Wheel & Car Corp.*, 363 U.S. 593, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960), the Supreme Court delineated the proper role of the courts in reviewing arbitration awards:

The refusal of courts to review the merits of an arbitration award is the proper approach to arbitration under collective bargaining agreements. The federal policy of settling labor disputes by arbitration would be undermined if courts had the final say on the merits of the awards. 363 U.S. at 596, 80 S.Ct. at 1360.

This is so because when a collective bargaining agreement contains an arbitration

clause, the question of interpreting the contract is a question for the arbitrator:

It is the arbitrator's construction which was bargained for; and so far as the arbitrator's decision concerns construction of the contract, the courts have no business overruling him because their interpretation of the contract is different from his. *Enterprise Wheel & Car, supra,* at 599, 80 S.Ct. at 1362.

Thus, in *UAW v. Buhr Machine Tool Corp.,* No. 74–70108 (E.D.Mich. September 6, 1974), *aff'd. without op.,* No. 75–1073 (6th Cir.1975), the Court upheld an arbitrator's Award which defined the term "available work hours" in holding that an employer had violated a collective bargaining agreement not to subcontract out work unless "it lacks the manpower, skills or equipment to perform the work or where the available work hours are not sufficient to meet delivery dates." *Buhr Machine Tool, supra,* slip op. at 1. The arbitrator had to define this term before he could resolve the dispute before him, and the Court could not say that his definition was wrong as a matter of law or unsupported by the contract as a whole. *Ibid,* at 6. In the instant case, however, the Court is not faced with conflicting factual claims or ambiguous contract language. As indicated on page 7 of his Opinion, the arbitrator found as a fact that "Grievant (Joseph Barrow) did not report to work or notify the Company of his absence on October 7, 8 or 9, . . . ." He made the further factual findings on page 11 of his Opinion:

With Company representatives cognizant of the October 7 return date, grievant unquestionably should have notified the Company within three working days thereof when he did not report for work as expected. *Article VIII, Section 2(c), mandates such action regardless of an employee's absence for cause.*

\* \* \* \* \* \*

Had grievant notified the Company on October 7, 8 or 9, pursuant to the contractual provision, his separation on October 9 would not have been justified. His failure to do so set in motion Company action resulting in his termination under Article VIII, Section 2(c). (Emphasis added)

The arbitrator clearly found that Mr. Barrow lost his seniority under the provision of Article VIII, Section 2, of the collective bargaining agreement. Once this finding had been made, he was not to go on to determine whether or not Barrow should be reinstated. The submission of the parties asked the arbitrator to determine whether Barrow should be reinstated to his employment without loss of seniority and with back pay only if the arbitrator found that he had not lost his seniority pursuant to Article VIII, Section 2. Nonetheless, the arbitrator concluded on page 12 of his Opinion:

However, since grievant's absences of October 7–9 were for illness and grievant verified that illness—albeit after termination—I believe his reinstatement is required. The provisions of Section 2(c) of the Loss of Seniority article patently would apply and justify termination had the Company not been aware of grievant's continuing illness. But Company representatives were cognizant of his medical condition and when he subsequently offered to produce a doctor's slip reflecting his continuous disability and authorizing a return to work on October 13, that statement should have been received and recognized.

This conclusion is not supported by the language of the contract and goes beyond the question submitted to him by the parties. Article VIII, Section 2(c), and Article VI, Section 11, both mandate that an employee must notify the Company of his absence within three consecutive days "or" [Art. VIII, Section 2(c)], and "unless" [Art. VI, Section 11], he has a satisfactory excuse mutually acceptable to *both* the Company and the Union. It is undisputed that Barrow did not provide the notification within the three day period, and it is equally clear that his excuse for not providing such notice was not acceptable to the Company. Article VIII, Section 2(c), clearly states that an excuse must be acceptable to the Compa-

ny, and not that the Company must accept any excuse which may be acceptable to the Union. This decision is left to the discretion of the Company by this contract, and the arbitrator should not have substituted his opinion as to what constituted a valid excuse for that of the Company's. In addition, the arbitrator does not indicate in his Opinion, nor did the defendants claim in their brief or upon oral argument, that the Company acted in bad faith, with intent to discriminate, or not in accordance with past practice. Instead the arbitrator has merely stated, in effect, that if he had made the decision on October 13, 1975, when Barrow came to the Company with the notification from Dr. White that he had been absent for medical reasons, he would have reinstated Barrow. The arbitrator nonetheless held that Barrow was not entitled to back pay or other benefits, "in view of grievant's attendance record and the fact he knew the Company was aware, through Dr. White's medical statement of the October 7 return date . . . ." Opinion, page 12.

In *Enterprise Wheel & Car, supra,* the Court stated:

A mere ambiguity in the opinion accompanying an award, which permits the inference that the arbitrator may have exceeded his authority, is not a reason for refusing to enforce the Award. 363 U.S. at 598, 80 S.Ct. at 1361.

But here we have no such "mere ambiguity". The arbitrator clearly found that the Company was justified under the contract in taking the action it did as regards Barrow. He then substituted his own sense of equity for that of the contract by reinstating Barrow with full seniority, but without back pay and benefits. In effect, the arbitrator is not deciding whether or not Barrow lost his seniority under Article VIII, Section 2(c), as the submission of the parties requested he decide, but rather, whether the punishment meted out by the Company to Barrow for his failure to comply with Article VIII, Section 2(c), was "fair". *See also, Truck Drivers Union Local 784 v. Ulry-Talbert Co.,* 330 F.2d 562 (8th Cir. 1964). For this reason, the arbitrator's de-

cision clearly falls within the exception the Supreme Court announced in *Enterprise Wheel & Car, supra,* to the general rule that a Court will not review the merits of an arbitration Award:

Nevertheless, an arbitrator is confined to interpretation and application of the collective bargaining agreement; he does not sit to dispense his own brand of industrial justice. He may of course look for guidance from many sources, yet his award is legitimate only so long as it draws its essence from the collective bargaining agreement. When the arbitrator's words manifest an infidelity to this obligation, courts have no choice but to refuse enforcement of the award. 363 U.S. at 597, 80 S.Ct. at 1361.

The decision the Court reaches today is further compelled by the holding of the Sixth Circuit Court of Appeals in *Timken Co. v. Local 1123, United Steelworkers of America, et al., supra.* In that case, an employee who was serving a 117 day jail term (later reduced to 29 days) for traffic violations was terminated by the Company under the terms of the collective bargaining agreement which provided:

An employee's length of service shall be broken and credit for all previous service lost by:

1. Voluntarily quitting the service of the Company (an unauthorized absence of seven consecutive scheduled work days shall be considered a voluntary quit); . . . .

The arbitrator held that this "voluntary quit" provision did not apply to situations where the employee had no intention of quitting and promptly notified the employer of his predicament. The Court held (Phillips, C. J., dissenting) that the arbitrator exceeded his authority in going beyond the terms of the contract and the uncontroverted testimony of the Company's personnel director that the Company never granted authorized absences to employees confined in jail, 482 F.2d at 1014, and affirmed the District Court's vacation of the arbitrator's Award. The Court of Appeals has also found that an arbitrator exceeded his au-

thority under the terms of a collective bargaining agreement which specifically stated that the arbitrator could not substitute his judgment for the employer's in management decisions or consider reversing a disciplinary action imposed upon an employee for failure to perform an assigned job unless the employee could prove that the performance of the assigned job would endanger his health when the arbitrator ordered the reinstatement of an employee who had been discharged for refusing to comply with a direct order from his supervisor. *Magnavox Co. v. International Union of Electrical Workers,* 410 F.2d 388 (6th Cir. 1969), aff'g., 287 F.Supp. 47 (E.D.Tenn.1968). The contract in *Magnavox* contained the following limitation on the arbitrator's authority:

2. An arbitrator under this agreement shall not have the right to:

\* \* \* \* \* \*

(b) Substitute his judgment for the employer's in matters which are solely Management's functions and rights under this contract.

(c) To consider, rule or enter any Award with respect to disciplinary action imposed upon an employee for refusal or failure to perform assigned job tasks, except where the employee can positively establish that the performance of such task would have created a serious health hazard to him. 287 F.Supp. at 49.

While no such provision is present in the collective bargaining agreement in the instant case, a less specific arbitration clause is not to be construed as conferring upon the arbitrator an unlimited discretion to settle the dispute before him. He sits to interpret the contract and cannot hold invalid action by an employer which conforms to the provisions of the contract. *Timken Co., supra,* at 1014–15.

In *Local 342, UAW v. T. R. W., Inc.,* 402 F.2d 727 (6th Cir.1968), the Sixth Circuit denied enforcement of an arbitrator's Award directing reinstatement of employees, and upheld the dismissal by the appellant Corporation of employees who had engaged in an illegal work stoppage, because such discharge was within the discretion of the Corporation under the collective bargaining agreement. Similarly, in *Amanda Bent Bolt Co. v. International Union, UAW, Local 1549, et al.,* 451 F.2d 1277 (6th Cir. 1971), the Court refused to enforce an arbitrator's Award which ordered reinstatement with full seniority for 28 employees who had engaged in a wildcat strike in violation of a no-strike clause in the collective bargaining agreement. The contract provided that employees striking in violation of the no-strike clause were subject to discharge and employees discharged for cause would lose their seniority. The Court found that the contract left it to the Company, not the arbitrator, to determine the proper penalty for engaging in a wildcat strike.

The *T. R. W.* and *Amanda Bent Bolt* cases, *supra,* involved wildcat strike action. This was not a factor in *Timken Co.,* and *Magnavox, supra,* and is not an element in the case before the Court. Thus, the threat to peaceful industrial labor relations which exists if employers are not able to deal with illegal strike action is not here presented in so stark a form. But the threat exists, however subtle, whenever a Court enforces an arbitrator's Award which reflects "his own brand of industrial justice" and does not draw its essence from the contract. A decision to enforce such an Award undermines the legitimacy of the very collective bargaining agreement which the parties entered into to stabilize their relationship. Therefore, the Court will grant plaintiff's request for Summary Judgment and Declaratory Judgment and will deny defendants' cross Motion for Summary Judgment. The Award entered on June 22, 1976, in the Matter of the Separation of Joseph Barrow shall be, and the same hereby is vacated.

## IV.

The Court also finds that the parties have an obligation to pay the compensation and expenses of the arbitrator, notwithstanding the fact that his Award has been vacated. Article V, Section 1, para. 3, of the collective bargaining agreement, *supra,*

expressly states that, "The compensation and expenses of the arbitrator shall be shared and paid equally by the parties." The contract does not state that the arbitrator will only be compensated for his time and expenses if his Award is upheld in the courts. When the parties bargained for the arbitrator's opinion, they accepted the risk that he might rule against them, and the additional possibility that his Award might not be upheld in the courts. The parties shall be, and the same hereby are, bound by their collective bargaining agreement to share and pay equally the compensation and expenses of Arbitrator Walt for his Opinion and Award of June 22, 1976.

IT IS SO ORDERED.