**DISTRICT 50, UNITED MINE WORKERS OF AMERICA, and Local Union No. 15149 of District 50, United Mine Workers of America, Plaintiffs-Appellants,**

v.

**CHRIS-CRAFT CORPORATION, Defendant-Appellee.**

**No. 17339.**

United States Court of Appeals
Sixth Circuit.

Dec. 7, 1967.

Harry Berke, Chattanooga, Tenn. (Wilkes T. Thrasher, Jr., and Berke & Berke, Chattanooga, Tenn., on the brief), for appellants.

Raymond R. Murphy, Jr., Chattanooga, Tenn. (Raymond R. Murphy, Jr., John L. Lenihan, Chattanooga, Tenn., on the brief), for appellee. Miller, Martin, Hitching, Tipton & Lenihan, Chattanooga Tenn., of counsel.

Before O'SULLIVAN, CELEBREZZE and COMBS, Circuit Judges.

CELEBREZZE, Circuit Judge.

Appellants, District 50, United Mine Workers of America, and Local Union No. 15149 of District 50, United Mine Workers of America, instituted a suit in the United States District Court for the Eastern District of Tennessee under § 301(a) of the Labor Management Relations Act, 29 U.S.C. § 185(a), to compel the Appellee, Chris-Craft Corporation, to arbitrate the discharges of eight of the Appellee's employees. By a later stipulation the discharges of four of the em-

ployees were arbitrated.[1] The District Court held that the Appellants were not entitled to require the Appellee to arbitrate the grievances filed on behalf of the four remaining employees, and from that judgment this appeal was taken.

The facts reveal that the City of Chattanooga was celebrating its Sesquicentennial; as a result certain of the Appellee's employees joined the commemoration of the event by growing mustaches and beards as urged by the City officials. Several of these employees were disciplined for reporting to work with beards, a practice that the Appellee considered against its policy. One employee, Charles Ingle, had served as a Union representative in a grievance procedure involving these employees and had been warned about his own unshaven condition. When he reported to work on Tuesday, July 20, 1965, with a mustache, Ingle was ordered to leave the factory by the Plant Manager. When Ingle returned to his work station, a policeman was called, who escorted him off the premises.

Fellow workers observing these events walked off their jobs and joined Ingle out in the street. The Regional Director of the Union requested the employees to return to work and warned them that their action was an unauthorized work stoppage in violation of the collective bargaining agreement. Three of the grievances involved in the instant case, the fourth being Ingle's, are on behalf of employees who were Union officials. According to their testimony they went out into the street to persuade the workers to return to their job; when the workers refused to return, however, they remained out with them. Also, in Ingle's case, it is undisputed on the record that he was not fired on July 20th. He was merely told to go home until he could come back clean shaven, and his testi-mony indicates that he understood the Company's position:

"Q. You could have gone in the next morning, could you not, sir?

"A. I could have, I suppose, yes, sir, but the men, we had a meeting and the men took a vote not to go back."

A large number of the Appellee's workers participated in the work stoppage. By Thursday of the same week as the walkout, all but eight of the employees had returned to work. The next day the eight remaining employees returned to work but were refused employment. Their grievances constituted the basis of the instant action.

The four employees whose grievances remain in dispute admitted by their testimony on cross-examination that they participated in an unauthorized work stoppage and that they realized at the time of the work stoppage that it was contrary to their contract. They contend, however, that they were singled out for discharge because of their positions in the Union and that, therefore, their discharges are a matter for arbitration.

■ Only two provisions in the arbitration provision under consideration are relevant. Article V, Section 1 of the collective bargaining agreement provides:

"In the event that a dispute shall arise between the Company and the Union or any employee of the Company who is covered by this Agreement relative to working conditions, layoff or discharge, the following grievance procedure will be used:"

The agreement thereafter sets out the proper method for presenting a grievance up to and including arbitration. But in Section 5.8 of Article V the agreement provides:

"The Union, its officers, agents and members covered by this Agreement

---

1. Chris-Craft contended that these employees had quit their job. Since their discharges were not based upon participation in the unauthorized work stop-page, their grievances concerned disputes over discharges that were not specifically excluded from the arbitration procedure.

agree that so long as this Agreement is in effect, there shall be no strikes, sit-downs, boycott or any unlawful acts that interfere with the Company's operations or the production or sale of its products. Any violation of the foregoing provisions may be made the subject of disciplinary action including discharge, and such action may not be raised as a grievance under this Agreement."

By their own admission the employees whose grievances are in dispute engaged in an unauthorized work stoppage. The District Court found that this violation of the no-strike clause was at least one reason for their discharges. Therefore, we find that the District Court properly held that the appellants were not entitled to compel arbitration of these discharges.

The employees' contention that they were singled out for discharge because of their Union positions cannot change the result. In essence the grievances charge that the employer discriminatorily applied a power exclusively reserved to it in the collective bargaining agreement, and the charge, if true, could undoubtedly be the basis for an unfair labor practice proceeding. But matters of arbitration are not always unfair labor practices, and unfair labor practices are not always matters for arbitration.[2] However the employees phrase their grievances they can make them no more than disputes over discharges for violation of the no-strike clause. Such disputes are expressly excluded from the arbitration procedure.

■■■ We are not unaware of the strong national labor policy favoring arbitration as a means of resolving labor disputes. United Steelworkers v. American Mfg. Co., 363 U.S. 564, 80 S.Ct. 1343, 4 L.Ed.2d 1403 (1960). But no national labor policy compels the use of arbitration to resolve any labor disputes. Sinclair Refining Co. v. Atkinson, 370 U.S. 195, 82 S.Ct. 1328, 8 L.Ed.2d 440 (1962). Arbitration is consensual, and the scope of the arbitrator's jurisdiction is determined by the collective bargaining agreement. Past decisions of the United States Supreme Court make it clear that in suits to compel arbitration the question of arbitrability is in the first instance for the Courts. United Steelworkers of America v. Warrior and Gulf Navigation Company, 363 U.S. 574, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960); Atkinson v. Sinclair Refining Co., 370 U.S. 238, 82 S.Ct. 1318, 8 L.Ed.2d 462 (1962). See also Smith and Jones, The Supreme Court and Labor Dispute Arbitration: The Emerging Federal Law, 63 Mich.L.Rev. 751, 788–791 (1965). "[C]ompulsory submission to arbitration cannot precede judicial determination that the collective bargaining agreement does in fact create such a duty." John Wiley & Sons v. Livingston, 376 U.S. 543, 547, 84 S.Ct. 909, 913, 11 L.Ed.2d 898 (1964).

■■ This Court has recently noted that arbitration should not be denied unless it can be said with positive assurance that the arbitration clause does not cover the dispute. American Radiator & Standard Sanitary Corporation v. Local 7 of the International Brotherhood of Operative Potters, 358 F.2d 455, 458 (6th Cir. 1966). It is also now well settled that all doubts are resolved in favor of arbitrability. United Steelworkers of America v. Warrior & Gulf Navigation Co., 363 U.S. 574, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960). But these stringent restrictions do not imply that a Court can never be convinced that a subject is excluded from arbitration. When, as in this case, a subject is specifically excluded from the arbitration procedure, we are

---

2. If the Appellee has discriminatorily used a power exclusively reserved to it under the collective bargaining agreement, the Appellant's remedy is an unfair labor practice proceeding with the National Labor Relations Board. The N.L.R.B. is not foreclosed from exercising its power even if its action requires interpretation of the arbitration agreement. N.L.R.B. v. Acme Industrial Co., 385 U.S. 432, 87 S.Ct. 565, 17 L.Ed.2d 495 (1967); N.L.R.B. v. C & C Plywood Corp., 385 U.S. 421, 87 S.Ct. 559, 17 L.Ed.2d 486 (1967).

not free to ignore the plain wording of the agreement between the parties.

Here the Appellants have framed an intriguing syllogism: The grievance reports allege that the discharges were because of Union animus; the agreement excludes from arbitration only discharges for violation of the no-strike clause; therefore, the Court must compel arbitration. The difficulty with this argument is that it must stand or fall upon the premise that under the instant contract the Court can inquire no further than the face of the contract and the face of the grievance report, regardless of what the actual facts indicate. To support this premise the Appellants rely heavily upon Los Angeles Paper Bag Co. v. Printing Specialties and Paper Products Union, 345 F.2d 757 (9th Cir. 1965). That case, however, is distinguishable from the instant case on two grounds: (1) There the factual dispute concerned whether an unauthorized work stoppage had in fact occurred; here that fact is admitted. (2) There the arbitration agreement contained a general clause providing for arbitration of "* * * differences arising out of the interpretation, application or alleged violation of any of the express provisions of this Agreement." Here the arbitration provision contains no similar clause. We are not dealing with a broad arbitration clause as in Drake Bakeries Incorporated v. Local 50, American Bakery & Confectionery Workers International, AFL–CIO, 370 U.S. 254, 82 S.Ct. 1346, 8 L.Ed.2d 474 (1962), or a vague no-strike clause as in Local Union No. 721, United Packinghouse, Food & Allied Workers AFL–CIO v. Needham Packing Co., 376 U.S. 247, 84 S.Ct. 773, 11 L.Ed.2d 680 (1964). The agreement merely provides that discharges are to be arbitrated, and the no-strike clause specifically excludes from that procedure discharges for participation in unauthorized work stoppages. No provision of the agreement and no other evidence before the Court indicated that the parties contemplated conferring a broad power upon the arbitrator. To the contrary, all of the evidence indicated that the employer bargained for and retained this one form of discipline free from the arbitration procedure.

■ Generally the Courts will not inquire into the factual circumstances of a dispute because under the standard arbitration clause to do so would be to consider the merits in an area reserved exclusively to the arbitrator by the agreement. But in the instant agreement we do not have a standard arbitration clause; and it is the agreement that circumscribes the inquiry of the Court. United Steelworkers of America v. Enterprise Wheel & Car Corp., 363 U.S. 593, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960). The Appellants' argument fails to comprehend that under the instant contract the Court can only compel arbitration of disputes over working conditions, layoffs, or discharges and in that area cannot compel arbitration of discharges for violation of the no-strike clause. In order to perform its function in applying the provisions of the contract, the Court must determine that a discharge occurred. After such a determination, the Court must then inquire as to the cause of the discharge and determine from the agreement if the discharge is a matter for arbitration. Such a determination necessarily entails some limited inquiry into the factual circumstances surrounding the discharge. The District Court made the proper inquiry and found that the discharges were not a matter for arbitration. We agree with that finding. The District Court was not, nor are we, called upon to make a determination as to the merits of the grievances. We merely determine that they are not arbitrable grievances. Since the grievances do not state a cause of action for breach of the collective bargaining agreement, whether they state a cause of action for unfair labor practice is a matter exclusively for the National Labor Relations Board in the first instance. San Diego Building Trades Council Millmen's Union Local 2020 v. Garmon, 359 U.S. 236, 79 S.Ct. 773, 3 L.Ed.2d 775 (1959).

The judgment of the District Court is affirmed.