402 F.2d 727
 LOCAL 342, UNITED AUTOMOBILE, AEROSPACE & AGRICULTURAL IMPLEMENT WORKERS OF AMERICA (UAW) AFL-CIO, Van E. Warren, Mark Brockette, Gail M. Tribble, Lewis C. Stone, Shirley L. Judkins, Delbert Storie and Perry Carlton, Plaintiffs-Appellees,
v.
T. R. W., INC., Defendant-Appellant.
 No. 18139.
 United States Court of Appeals Sixth Circuit.
 October 23, 1968.
 
 Owen J. Neighbours, Indianapolis, Ind., for appellant, William E. Plane, Indianapolis, Ind., on the brief, Cadick, Burns, Duck & Neighbours, Indianapolis, Ind., of counsel.
 John A. Fillion, Detroit, Mich., for appellees, Stephen I. Schlossberg, Detroit, Mich., George E. Barrett, Nashville, Tenn., Bernard G. Link, Baltimore, Md., on the brief.
 Before O'SULLIVAN and PHILLIPS, Circuit Judges, and CECIL, Senior Circuit Judge.
 O'SULLIVAN, Circuit Judge.
 
 
 1
 T. R. W., Inc., a manufacturer with a plant at Lebanon, Tennessee, appeals from a judgment of the District Court for the Middle District of Tennessee enforcing an arbitrator's award which directed reinstatement of seven of appellant's employees who had been discharged for striking in violation of a collective bargaining contract. The contract was the product of bargaining between the company and appellee union — Local 342, United Automobile, Aerospace & Agricultural Implement Workers of America (UAW) AFL-CIO — and provided in its Article X that:
 
 
 2
 "Section 1 — During the term of this agreement the Union and its members, individually and collectively, will not permit, cause, or take part in any strike, picketing, slowdown or other curtailment or restricting of production or interference with work in or about the Company's plant or premises. * * * The parties recognize the right of the Company to take disciplinary action, including discharge, against any employees who participate in a violation of this Section, whether such action is taken against all of the participants or against only selected participants * * *." (Emphasis supplied.)
 
 
 3
 On July 8, 1964, in violation of the agreement, more than two hundred of appellant's employees walked off their jobs, including the seven individual appellees, Van E. Warren, Mark Brockette, Gail M. Tribble, Lewis C. Stone, Shirley L. Judkins, Delbert Storie and Perry Carlton.
 
 
 4
 The next day, before any of the strikers had returned to work, appellant company sent a telegram to each of the above seven. It read as follows:
 
 
 5
 "Because of your participation in an action in violation of Section 1, Article 10 of the company-union agreement dated February 15, 1963, you are discharged."
 
 
 6
 Grievances were filed, the company refused to withdraw the discharges, and the matter went to arbitration. The arbitrator's award, entered May 15, 1965, directed the reinstatement of all of the individual appellees and ordered that two of them be compensated for loss of pay from the date of their discharge, July 9, 1964. It was disclosed during the course of the grievance procedure or at the hearing before the arbitrator that the reason the seven appellees were selected for discharge was the company's belief that they had been active ringleaders in encouraging other employees to participate in the strike. The company produced written reports identifying all seven dischargees as activists in the strike. On this subject, the arbitrator's opinion recites:
 
 
 7
 "The Arbitrator has examined the entire record carefully and it is his judgment that there is substantial credible evidence to support the finding that grievants Stone, Judkins, Tribble, Storie, and Carlton actively encouraged other employees to participate in the strike. In other words, the record in this case shows sufficient evidence to establish that these five employees were deserving of discipline under the standard that the Company was utilizing and which it was entitled to utilize under Article X, Section 1."
 
 
 8
 After his above finding that five of the grievants were leaders of the strike, he exonerated the other two:
 
 
 9
 "In the opinion of the Arbitrator, however, the record fails to show any substantial basis for concluding that Brockette could be said to have actively encouraged other employees to engage in the strike. In the opinion of the Arbitrator the record is similarly deficient with respect to substantial evidence which would indicate that grievant Warren was guilty of actively encouraging other employees to engage in the strike."[1]
 
 
 10
 Upon this finding, these two grievants were awarded back pay as well as reinstatement. It was his view that, notwithstanding that all seven appellees had engaged in the illegal strike, giving the company the right to discharge them, the company had a burden of proving to him that each of the grievants was in fact a leader in encouraging the illegal walkout. Although he found that the first mentioned five grievants had engaged in an illegal strike and were its ringleaders, he ordered all of them reinstated, the five without back pay. He did this upon his assumption that it was within his province to determine whether the company's exercise of its own contractual rights comported with his own notion of "fundamental fairness." He stated:
 
 
 11
 "The Arbitrator has found that there was a sufficient factual basis for the Company to conclude that grievants Tribble, Stone, Judkins, Storie and Carlton were guilty of actively encouraging other employees to participate in the strike. The Arbitrator believes, however, that as to these five grievants the discharge penalty should be set aside because the procedure followed by the Company was lacking in fundamental fairness. The record shows that the employer in this case did not advise any of the grievants or the Union as to the basis for discharging the grievants either prior to discharge or thereafter.
 
 
 12
 * * * * * *
 
 
 13
 "The Arbitrator believes that a discharge can be improper because of procedural unfairness and it is his opinion that this is true in the present case. In the absence of compelling circumstances it is not ordinarily proper to discharge an employee without informing him of the charges against him and without affording some opportunity for objective investigation." (Emphasis supplied.)
 
 
 14
 The District Judge ordered the award of the arbitrator enforced. We reverse.
 
 
 15
 We consider that the company's contract with the union, of which all of the individuals were members, gave it a clear right to do what it did. The language of this contract was not ambiguous, nor did any of its terms require interpretation by the arbitrator or the courts.
 
 
 16
 Neither before the arbitrator nor the District Judge, nor in their addresses to this Court, did appellees contend that the appellant company did anything that was not its clear right under the contract. Appellees did not dispute the facts that:
 
 
 17
 a) There was a strike — a curtailment and restricting of production — an interference with work.
 
 
 18
 b) The seven dischargees were members of the union.
 
 
 19
 c) The dischargees all took part in the involved conduct which violated the contract.
 
 
 20
 Under these circumstances, the company had the right:
 
 
 21
 a) To take disciplinary action — including discharge — against any employee who participated in the described conduct, and
 
 
 22
 b) Such action could be taken against all or against only selected participants.
 
 
 23
 Nothing in the contract made the exercise of these rights subject to ultimate approval of an arbitrator or a court; neither was there a requirement of any preliminaries — prior notice or bilateral investigation. In ordering enforcement of the award, the District Judge said:
 
 
 24
 "The arbitrator found that while the company did have this explicit power of selective discipline, an inquiry into the reasonable use of this power was not precluded. The Court is of the opinion that the arbitrator's ruling that the exercise of the power of selective discharge must be reasonable under the circumstances is a fair and logical inference from the agreement.
 
 
 25
 Also, it is a reasonable inference that in the exercise of this power fair procedure must be adhered to."
 
 
 26
 The conduct of the arbitrator, thus approved by the District Judge, in reality constituted the addition of terms to a negotiated contract that was neither unclear nor incomplete. The arbitrator held that the company's way of exercising its contractual rights was lacking in fundamental fairness. He finds this fundamental unfairness in what he says was the company's failure to tell the employees why they were discharged. He said:
 
 
 27
 "The Arbitrator believes that a discharge can be improper because of procedural unfairness and it is his opinion that this is true in the present case. In the absence of compelling circumstances it is not ordinarily proper to discharge an employee without informing him of the charges against him and without affording some opportunity for objective investigation." (Emphasis supplied.)
 
 
 28
 But, were it necessary, each of the involved employees was told of the charge against him and the reason for his discharge. Each received a telegram advising that:
 
 
 29
 "Because of your participation in an action in violation of Section 1, Article 10 of the company-union agreement dated February 15, 1963, you are discharged." (Emphasis supplied.)
 
 
 30
 The conduct which brought into being the company's right to discharge any employee was "participation in an action in violation of Section 1, Article 10, of the company-union agreement." All seven appellees were admittedly guilty of such a violation and were thereby subject to discharge without reference to whether they were or were not activists in promoting or encouraging others to join in an illegal strike. It was not for an arbitrator to add to the contract a provision that the above right to discharge would be lost unless the company had, in the turmoil and crisis of a strike, announced the reasons for the selectivity employed in exercising its rights and later had established that such reasons were, in the view of an arbitrator, sufficient to permit it to exercise the selectivity which was also an unqualified contractual right.
 
 
 31
 There is nothing in the contract calling for "objective investigation"; neither does the arbitrator's opinion tell when and how, in the crisis of an illegal walkout, an "objective investigation" was to be had. The contract provides:
 
 
 32
 "The Arbitrator shall not have the power to add to or subtract from or modify any of the terms of this Agreement or any agreement supplemental hereto."
 
 
 33
 It appears to us that the company's right to selectively discharge participants in an illegal work stoppage was intended to allow the company to deal quickly with such an emergency. The efficacy of its exercise is portrayed by the following factual findings of the arbitrator:
 
 
 34
 "On July 8, 1964 there was a work stoppage at the Company's Plant. Two hundred fifteen employees in the bargaining unit clocked out and left the plant at approximately 10 A.M. on that date. On the same date a substantial number of employees who were scheduled to work on the second shift did not do so. On the following day (July 9, 1964) there were some two hundred thirty-six employees who were scheduled to work on the first shift who did not report at the scheduled starting time of 7 A.M. Employees on this shift did begin returning to work at approximately 11:30 A.M. on July 9. At 10:15 A.M. on July 9 the Company, through its Industrial Relations Manager, sent to each of the grievants involved in this case the following notice of discharge by wire."
 
 
 35
 Thus, hardly more than an hour after the grievants were discharged and the union notified of such fact, the employees began to return to work. It can be assumed that the contract provision which allowed the selective discharge of some of the participants in a walkout was the product of bargaining and that the company gave some quid pro quo to get it. An arbitrator should not be permitted to nullify it.
 
 
 36
 We consider that our own decision in District 50, United Mine Workers v. Chris-Craft Corp., 385 F.2d 946 (6th Cir. 1967), supports our position here. The factual differences of that case do not destroy its appositeness to the case at bar. Some eight employees were chosen for discharge because they engaged in an illegal strike. These eight were apparently selected to be discharged out of a large group of strikers because they were union officials. The company refused to arbitrate the validity of these discharges on the ground that discharge for participation in an illegal strike was the non-arbitrable prerogative of the company. We indicated that a clear provision of a collective bargaining contract should be enforced.
 
 
 37
 "No provision of the agreement and no other evidence before the Court indicated that the parties contemplated conferring a broad power upon the arbitrator. To the contrary, all of the evidence indicated that the employer bargained for and retained this one form of discipline free from the arbitration procedure." 385 F.2d at 950.
 
 
 38
 The Fourth Circuit in Textile Workers Union v. American Thread Co., 291 F.2d 894 (4 Cir., 1961), held that, after an arbitrator had unequivocally found that the discharged employee was in fact guilty of conduct constituting "just cause" for discharge under a collective bargaining agreement, he was not free to then measure the "appropriateness" of the penalty.
 
 
 39
 "The reservation of a right to either discipline or discharge for cause would be wholly ineffective and meaningless if the employer's action, pursuant to such right, is subject to review by an arbitrator on the basis of appropriateness. If the reserved right is construed to mean that the employer can take no disciplinary action in excess of a reprimand, except at its own risk and subject to severe penalties in case an arbitrator should later be of the opinion that some milder action is appropriate, the effect would be that the employer's inherent right which has not been expressly relinquished by contract is no right at all." 291 F.2d at 899.
 
 
 40
 We see no reason to further indulge in dissertation or review of the cases which have dealt with the subject now under our consideration. The trilogy, United Steelworkers v. American Mfg. Co., 363 U.S. 564, 80 S.Ct. 1343, 4 L.Ed.2d 1403 (1960); United Steelworkers v. Warrior & Gulf Nav. Co., 363 U.S. 574, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1969); and United Steel Workers v. Enterprise Wheel & Car Corp., 363 U.S. 593, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960), have set down the applicable rules. Enterprise announces the rule controlling this case.
 
 
 41
 "Nevertheless, an arbitrator is confined to interpretation and application of the collective bargaining agreement; he does not sit to dispense his own brand of industrial justice. He may of course look for guidance from many sources, yet his award is legitimate only so long as it draws its essence from the collective bargaining agreement. When the arbitrator's words manifest an infidelity to this obligation, courts have no choice but to refuse enforcement of the award." 363 U.S. at 597, 80 S.Ct. at 1361.
 
 
 42
 Obeying that rule, we decide that the order of the arbitrator should have been denied enforcement. The judgment of the District Court is reversed, with direction to enter judgment dismissing the complaint.
 
 
 
 Notes:
 
 
 [1]
 This exoneration was the product of the arbitrator weighing the evidence adduced at the hearing before him. The company produced evidence that both Brockette and Warren were activists in encouraging the walkout. They both denied the conduct charged to them. The arbitrator, upon his evaluation of the probative worth of the evidence and his finding as to credibility, absolved them both of actively encouraging the walkout