**GENERAL DRIVERS, WAREHOUSEMEN AND HELPERS LOCAL UNION NO. 509, a/w International Brotherhood of Teamsters, AFL–CIO, Plaintiff–Appellant,**

v.

**ETHYL CORPORATION, Defendant–Appellee.**

No. 93–2513.

United States Court of Appeals, Fourth Circuit.

Argued July 13, 1994.

Decided Oct. 25, 1995.

**ARGUED:** Jonathan Gans Axelrod, Beins, Axelrod, Osborne, Mooney & Green, P.C., Washington, DC, for Appellant. Charles Franklin Thompson, Jr., Ogletree, Deakins, Nash, Smoak & Stewart, Columbia, South Carolina, for Appellee. **ON BRIEF:** Jonathan P. Pearson, Ogletree, Deakins, Nash, Smoak & Stewart, Columbia, South Carolina, for Appellee.

Before RUSSELL, WIDENER, and HALL, Circuit Judges.

Affirmed by published opinion. Judge WIDENER wrote the majority opinion, in which Judge RUSSELL concurred. Judge HALL wrote a dissenting opinion.

## OPINION

WIDENER, Circuit Judge:

This litigation arises out of a collective bargaining agreement between the General Drivers, Warehousemen and Helpers, Local Union No. 509 (Local 509) and Ethyl Corporation, covering certain employees at Ethyl's Orangeburg, South Carolina Plant. In 1992 Local 509 filed a formal grievance against Ethyl, alleging that the tests Ethyl used to determine employee wage rates discriminated on the basis of race and age. Local 509 sought arbitration of the dispute after Ethyl declined to address its allegations. Ethyl claimed the dispute was not arbitrable and refused to participate in arbitration. Local 509 then filed suit in the United States District Court for the District of South Carolina seeking an order compelling arbitration. After discovery, the district court granted Ethyl's motion for summary judgment and Local 509 appeals. We are of opinion that the district court properly determined that the dispute in question was not arbitrable under the parties' collective bargaining agreement, and accordingly, we affirm.

## I.

In 1977, the National Labor Relations Board certified Local 509 as the bargaining representative for the production and maintenance employees at Ethyl's Orangeburg Plant. Local 509 and Ethyl signed collective bargaining agreements in 1977, 1980, 1983, 1986, 1990 and 1993. This dispute centers around provisions in the 1990 agreement and concerns Local 509's allegations that Ethyl's method for determining wage rates is discriminatory.

Ethyl divides its production and maintenance employees into four different classifications or departments and further breaks down each department into different job levels.[1] An employee's wage rate is determined

---

1. The classifications are Production, Maintenance, Traffic and Mechanic. They are also referred to as Areas by various employees. The schedule in effect when this case was filed is reproduced here:

SCHEDULE OF HOURLY RATES
Effective February 25, 1991

| Job Class | Interval | Rate | Job Class | Interval | Rate |
|---|---|---|---|---|---|
| PRODUCTION | | | MAINTENANCE | | |
| Probation | Start | $ 8.42 | Serv. Worker I | | |
| Operator I | 14 weeks | 8.88 | Probation | Start | $ 7.04 |
| | 26 weeks | 9.59 | | 14 weeks | 7.65 |

not by the task he does but only by his job level, which may include time of service in that level in some instances. Ethyl promotes employees from one job level to the next only if they complete the training programs and pass the written tests specified in the collective bargaining agreement. The tests measure an employee's understanding of why he does what he does, not his ability to do it. Ethyl pays higher rates of pay to employees with knowledge of the production process. The actual duties employees perform within a department may be the same and are not assigned by job level. For example, in the Traffic Department, a level 1 employee may perform the same task as a level 3 employee. However, the level 3 employee will receive a significantly higher wage because of his ability to pass the tests at issue.

Ethyl has used job promotion tests at least since 1977 when Local 509 began representing Ethyl's employees. Local 509 agreed to the use of specific tests in each collective bargaining agreement it negotiated with Ethyl, including the 1990 agreement. On January 17, 1992, Local 509's business agent filed a formal complaint, alleging a violation of "Article X(10), Article 12 and all other Articles pertaining to this case." The grievance further alleged:

> The Company is in violation of Article X(10) by allowing employees to work in a higher class and not compensate employees appropriately for work performed at the applicable rate of pay. This is a violation of the bargaining agreement and the union is requesting all back pay for all employees who did not receive the proper rate of pay for working in a higher class.[2]

On February 17, 1992 Ethyl informed Local 509 by letter that because the tests used were those specifically required by the 1990 collective bargaining agreement it considered the matter resolved.

Local 509's business agent responded to Ethyl's letter on March 30, 1992, informing Ethyl that if the grievance was not resolved at a scheduled April 7, 1992 meeting, Local 509 would seek redress through arbitration, an NLRB proceeding, or an EEOC proceeding. Apparently, any further efforts to resolve the complaint were unsuccessful, and Local 509 timely filed a request for arbitra-

| Job Class | Interval | Rate |
|---|---|---|
| PRODUCTION | | |
| Operator II | Start | 10.41 |
| | 26 weeks | 11.13 |
| | 52 weeks | 11.83 |
| Operator III | | 13.07 |
| Operator IV * | | 13.63 |
| TRAFFIC | | |
| Probation | Start | 8.42 |
| Mat.Handler I | 14 weeks | 8.88 |
| | 26 weeks | 9.59 |
| Mat.Handler II | Start | 10.41 |
| | 26 weeks | 11.13 |
| | 52 weeks | 11.83 |
| Mat.Handler III | | 13.07 |

| Job Class | Interval | Rate |
|---|---|---|
| MAINTENANCE | | |
| Serv. Worker II | | |
| Probation | Start | 7.85 |
| | 14 weeks | 8.34 |
| Serv. Worker III * | | 9.59 |
| MECHANIC | | |
| Probation | Start | 9.24 |
| Mechanic I | 14 weeks | 9.59 |
| | 26 weeks | 9.96 |
| Mechanic II | Start | 10.89 |
| | 26 weeks | 11.37 |
| | 52 weeks | 11.92 |
| Mechanic III | | 13.07 |
| Mechanic IV | | 14.26 |

All intervals indicated above are accumulative.

* Limited position.

2. Although the record is unclear as to when complaints about the testing first began and when those complaints began to dwell on race and age discrimination rather than demands for equal pay for equal work, the complaint does not claim an earlier violation than when the formal grievance was filed on January 17, 1992.

The grievance only concerns Production, Maintenance and Traffic departments.

There also is no doubt that the grievance claims only race, and perhaps age, discrimination because some of the employees did not or could not pass the written test for a higher job level necessary for an increase in pay.

tion. Ethyl failed to pick an arbitrator from a panel that the Federal Mediation and Conciliation Service supplied and refused to submit the dispute to arbitration. On March 4, 1993 Local 509 filed a complaint in the district court under § 301 of the Labor Management Relations Act, 29 U.S.C. § 185. Local 509 sought an order to enforce the 1990 collective bargaining agreement by compelling Ethyl to arbitrate the dispute surrounding the testing procedure. Following discovery, the district court granted Ethyl's motion for summary judgment, refusing to compel arbitration. Local 509 appeals.

## II.

■■■ Our review of a motion for summary judgment is *de novo*. *Cumberland Typographical Union 244 v. The Times & Alleganian Co.*, 943 F.2d 401, 407 (4th Cir.1991). The principles of arbitrability which govern this dispute are well settled. *AT & T Technologies, Inc. v. Communications Workers of America*, 475 U.S. 643, 648, 106 S.Ct. 1415, 1418, 89 L.Ed.2d 648 (1986). Arbitration of a claim is available only when the parties involved agree to arbitration by contract. *United Steelworkers of America v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582, 80 S.Ct. 1347, 1352–53, 4 L.Ed.2d 1409 (1960). Whether parties must arbitrate a particular dispute is for the courts to decide on the basis of the contract. *Warrior & Gulf*, 363 U.S. at 582, 80 S.Ct. at 1352–53; *John Wiley & Sons, Inc. v. Livingston*, 376 U.S. 543, 546–47, 84 S.Ct. 909, 912–13, 11 L.Ed.2d 898 (1964). However, when deciding whether a dispute is arbitrable, courts may not judge the merits of the claim put forward. *United*

*Steelworkers of America v. American Mfg. Co.*, 363 U.S. 564, 568, 80 S.Ct. 1343, 1346–47, 4 L.Ed.2d 1403 (1960). Even claims that courts might deem without merit are entitled to arbitration if the parties agreed in their contract that such issues were arbitrable. *American Mfg. Co.*, 363 U.S. at 567–68, 80 S.Ct. at 1346. Because arbitration is the preferred method for settling labor disputes, any doubts should be decided in favor of arbitration. *Warrior & Gulf*, 363 U.S. at 582–83, 80 S.Ct. at 1352–53. However, if the agreement specifically excludes a subject from arbitration, courts are not free to ignore the plain wording of the agreement and must decline to compel arbitration. *District 50, United Mine Workers of America v. Chris-Craft Corp.*, 385 F.2d 946, 949–50 (6th Cir.1967).

### A.

The 1990 collective bargaining agreement between Ethyl and Local 509 provides for arbitration of disputes "arising out of a claim that a specific written provision of this Agreement has been violated."[3] The parties in this case agree that as a general matter, claims of discrimination qualify for arbitration under this agreement because the discrimination clause is a "specific written provision" in the agreement.[4] However, the parties dispute whether two express exclusions from arbitration contained in the agreement apply to this particular claim of discrimination. We first address the "wages and rates of pay" exclusion, and because Local 509's claim fits under this exclusion, we find it

---

**3.** Article VI of the agreement defines arbitrable issues as follows:

> Arbitrable issues are only those grievances which meet all of the following tests:
> 1. The issue must have gone through the steps of the grievance procedure as outlined in this Agreement unless processing through any step has been waived by both parties.
> 2. All time limits within the grievance procedure itself must have been observed.
> 3. Notice of intent to arbitrate must have been received by the Company within fifteen (15) working days after issuance of the last answer of the Company following the last step of the grievance procedure.

> 4. The issue must be one arising out of a claim that a specific written provision of this Agreement has been violated, other than those matters which are strictly the prerogatives of management.

Because the parties agree that the first three requirements are not in dispute, we need only address the fourth requirement.

**4.** Article XII(E) of the agreement reads:

> There shall be no discrimination against any employee because of race, creed, color, age, religion, sex, handicap or status as a disabled veteran or as a veteran of the Vietnam Era in any matter pertaining to wages, hours of work and other conditions of employment.

unnecessary to address the "management rights" exclusion.[5]

## B.

■ Article VI(C) states in part that:

[T]he provisions of this [arbitration clause] shall not apply to matters affecting wages and rates of pay as set forth in Exhibit B attached hereto.

Thus, if the job promotion tests are matters affecting wages and rates of pay, any presumption in favor of arbitrability is overcome by an express exclusion.

The tests required by the agreement are a *sine qua non* of an employee's pay.[6] If an employee completes training and can pass the tests, that employee's wages will go up. If the employee cannot pass the test, the employee will get no raise, regardless of that employee's ability to perform the work or complete the training. The position of Local 509 as to the whole case was clearly stated by it in oral argument in the district court:

Our problem is that the people [the affected employees] are in different pay classifications and they are in different pay classifications only because they can't pass a discriminatory test.

If the test were ruled to be fair, we wouldn't have a back pay claim. It's only the discriminatory test which puts people in the wrong pay scales.

We agree with Ethyl, that nothing in the agreement relates more closely to wages and rates of pay than do these tests. Local 509 agreed to the tests,[7] and agreed to the wage rates set out in Exhibit B of the Agreement. It even agreed to the specific tests at issue here and a complete 1993 collective bargaining agreement after it filed this case in the district court. It cannot now seek to renegotiate express exclusions of the collective bargaining agreement through arbitration. Such an interpretation would allow Local 509 to render exclusions from arbitration meaningless and reopen negotiation of any contract term by simply claiming discrimination.

We are of opinion that the dispute between Ethyl and Local 509 as to whether or not the required and agreed upon tests are discriminatory on account of race or age is a question which was excluded from arbitration under Article VI of the contract as a "matter[ ] affecting wages and rates of pay." While no case on identical facts has come to our attention, two circuits have decided the effect of such exclusionary provisions in collective bargaining agreements in quite similar cases and have come to the same conclusion as do we. In *Local 13, International Federation of Professional and Technical Engineers v. General Elec. Co.,* 531 F.2d 1178 (3rd Cir. 1976), the collective bargaining agreement gave to General Electric the right to control the assignment of work and provided that this article of the contract was not subject to arbitration. Other provisions of the contract

---

5. Ethyl argues that the issue here is also excluded from arbitration by the last clause of Article VI(A)(4) of the contract which excludes "matters which are strictly the prerogatives of management." One of the prerogatives of management under Article III(A), "Management Rights," is "the qualifications of employees" and Local 509 admitted in argument in the district court that "... we would concede that we couldn't go to you, or to the company and say, 'the test is too hard, it ought to be easier.' That is the prerogative of management." So there is justification for Ethyl's position. Local 509, on the other hand, argues that since it has agreed to the specific tests at issue here, the management rights clause has no application in this case. So there is also justification for the position of Local 509. Because we decide that the grievance here is a "matter[ ] affecting wages and rates of pay" mentioned in Article VI(C) of the contract, we need not decide whether the management rights clause also applies to exclude arbitration.

6. Article VIII(B)(1) states:

In case of promotion from one job level to another within a department, employee's upward movement will be dependent on his meeting all the qualifications (training, skill and knowledge) as spelled out in the training manual for the job involved and as successfully demonstrated by the employee based on oral, written, and practical tests referred to in the manual.

Exhibit B of the agreement lists employee wage rates by job level. See note 1.

7. Ethyl does not argue that by agreeing to the tests, Local 509 waived its right to file a grievance. Assuming it is true that Local 509 can challenge the tests even though it negotiated and agreed to them, it still cannot compel Ethyl to arbitrate the claim, when Ethyl never agreed to do so. *Warrior & Gulf,* 363 U.S. at 582, 80 S.Ct. at 1352–53.

provided for the arbitration of seniority, discrimination [8] and other clauses of the collective bargaining agreement. The district court held that when the assignment of work appeared to be violative of the seniority and discrimination clauses of the contract, the subject of assignment of work was nevertheless arbitrable. The Third Circuit reversed and held that the specific exclusion controlled and stated that it was "not concerned with the arbitrability of these [other] provisions." 531 F.2d at 1185. So, except that the discrimination in *General Electric* was that based on union membership and not on race or age, that case and this one are on all fours. In *District 50, United Mine Workers of America v. Chris–Craft Corp.*, 385 F.2d 946 (6th Cir.1967), the collective bargaining agreement contained a no-strike clause and a provision that any violation of the no-strike clause would be subject to disciplinary action which was not subject to a grievance, meaning that it was not arbitrable. Several employees walked off the job because the company would not permit beards, a part of a local celebration, and they were discharged for violating the no-strike clause. They sought to compel arbitration under another clause of the contract which permitted the grievance procedure for discharges. The Sixth Circuit affirmed the district court, which gave effect to the exclusionary clause in the collective bargaining agreement. We align ourselves with the Third and Sixth Circuits.

We do not mean to, and we do not, suggest that there is no merit to the claim of Local 509, that the required and agreed upon tests may be subject to criticism on account of discrimination relating to race or age. Nor do we suggest that the claim has merit. We simply do not address the merits of that claim. We hold only that any remedy Local 509 may have for any such discrimination in the said tests is not available to it through arbitration under the collective bargaining agreement.

8. Based on union membership.

9. Our decision does not depend upon the claim which Ethyl has made that "because the agreement refers to the test specifically, the union

The judgment of the district court is accordingly

*AFFIRMED.*[9]

K.K. HALL, Circuit Judge, dissenting:

I respectfully dissent. Arbitration of labor disputes is highly favored, and, where a collective bargaining agreement contains an arbitration clause, arbitration should be ordered "unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage." *AT & T Technologies, Inc. v. Communications Workers of America*, 475 U.S. 643, 650, 106 S.Ct. 1415, 1419, 89 L.Ed.2d 648 (1986) (quoting *Steelworkers v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582–583, 80 S.Ct. 1347, 1352–1353, 4 L.Ed.2d 1409 (1960)). I do not feel positively assured that this grievance is not arbitrable. Accordingly, I would reverse the judgment of the district court and remand with instructions to enter an order compelling arbitration.

The arbitration clause of the contract applies to any dispute "arising out of a claim that a specific provision of this Agreement has been violated, other than those matters which are strictly the prerogatives of management." The "specific provision" relied on by the union is the non-discrimination clause of Article XII(E):

> There shall be no discrimination against any employee because of race, creed, color, age, religion, sex, handicap or status as a disabled veteran or as a veteran of the Vietnam Era in any matter pertaining to wages, hours of work and other conditions of employment.

Ethyl counters, and the majority agrees, that the dispute falls within a specific "prerogative of management" identified in the arbitration article itself:

> It is further understood and agreed that the provisions of the Article shall not apply

cannot now challenge the test as discriminatory." Dissenting opinion, p. 86. Our opinion did not address such a position, and its introduction into the dissenting opinion is merely a patsy, we think.

to matters affecting wages and rates of pay as set forth in [an exhibit to the agreement].

According to Ethyl, if the employee were to win the grievance, he might end up in a higher pay grade, and therefore his grievance "affects wages and rates of pay." If the company is right, then any grievance that could result in a back pay award—including the very archetype, the dismissal without just cause—is also excluded. I think that the provision cited by the company just means that an arbitrator cannot alter the wage levels themselves. At the very, very least, one cannot say with "positive assurance" that the provision is not "susceptible" to that interpretation. Moreover, the discrimination provision specifically prohibits the company from discriminating "in any matter pertaining to wages ...," so it is patently illogical to then say that a discrimination complaint is not arbitrable because it could "affect" the grievant's wages. This paradox vanishes if one interprets the contract as I do, and as an arbitrator could.

The company also argues that, because the agreement refers to the test specifically, the union cannot now challenge the test as discriminatory. The district court espoused this argument in refusing to compel arbitration.

This argument nonetheless fails, for two reasons. First of all, the union and company *agree* in the contract that classification of employees can be based on the test, which implies that giving the test is not a *prerogative* of management. But if the union agreed to the test, how can it now assert that the test is discriminatory? Maybe it cannot. Maybe the grievance is meritless, even frivolous, under the contract. But arbitration cannot be denied on account of our assessment of the merits of the dispute. *AT & T Technologies,* 475 U.S. at 649–650, 106 S.Ct. at 1418–19. "The processing of even frivolous claims may have therapeutic values of which those who are not a part of the plant environment may be quite unaware." *Steelworkers v. American Manufacturing Co.,* 363 U.S. 564, 568, 80 S.Ct. 1343, 1346–47, 4 L.Ed.2d 1403 (1960).

I would reverse the judgment of the district court and remand with instructions to enter an order compelling arbitration.