**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

LIMITORQUE CORPORATION,
Plaintiff-Appellee,

v.

No. 97-2345

INTERNATIONAL ASSOCIATION OF
MACHINISTS AND AEROSPACE
WORKERS, LODGE NO. 10,
Defendant-Appellant.

Appeal from the United States District Court
for the Western District of Virginia, at Lynchburg.
Jackson L. Kiser, Senior District Judge.
(CA-96-64-L)

Argued: May 5, 1998

Decided: July 6, 1998

Before HAMILTON and MOTZ, Circuit Judges, and
BEEZER, Senior Circuit Judge of the
United States Court of Appeals for the Ninth Circuit,
sitting by designation.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

**ARGUED:** James Joseph Vergara, Jr., VERGARA & ASSO-
CIATES, Hopewell, Virginia, for Appellant. Eric Hemmendinger,
SHAWE & ROSENTHAL, Baltimore, Maryland, for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

Limitorque Corporation ("Limitorque") brought an action to vacate an arbitration award in favor of the International Association of Machinists and Aerospace Workers, Lodge No. 10 ("IAM"). IAM appeals from the district court's grant of summary judgment in favor of Limitorque. We have jurisdiction, 28 U.S.C. § 1291, and we affirm.

I

IAM and Limitorque had operated under a long-standing series of collective bargaining agreements ("CBAs"). From 1986 through 1995, the CBAs provided the same dental benefits to hourly employees as Limitorque provided to its salaried employees. The CBAs did not, however, require this parity.

In May 1995 the parties negotiated a new CBA. The negotiations were conducted under Negotiating Ground Rules, one of which, rule 3, provided that "[t]here will be no tentative agreement reached on any issue not reduced to writing and signed by both parties." At the time of the CBA negotiations, Limitorque was also negotiating with its dental insurer regarding changes to the Limitorque dental plans. On May 10, 1995, during the CBA negotiations, the IAM negotiators asked the Limitorque negotiator how benefits would change under the new dental plans. The Limitorque negotiator stated that hourly and salaried employees would receive the same benefits. On May 11 Limitorque presented a "Final Offer" that did not mention the dental plan. The IAM negotiators accepted the Final Offer. On May 12 the IAM negotiators again asked about the dental plan, and the Limitorque negotiator again stated that hourly and salaried employees would receive the same benefits. Both parties agree that there is a new CBA ("the 1995 CBA"), but the 1995 CBA has not been reduced to writing because of disagreement over its terms.

2

On August 1, 1995, Limitorque and its dental insurer arrived at a new agreement providing greater benefits to salaried employees than to hourly employees. IAM sought arbitration, claiming that under the 1995 CBA hourly employees were entitled to the same dental benefits as salaried employees. At the arbitration, Limitorque reserved its right to obtain de novo review of the issue of arbitrability. The arbitrator found that the dispute was arbitrable and that the 1995 CBA provided for equal dental benefits. Limitorque filed suit in district court, seeking to vacate the arbitration award. The district court granted summary judgment to Limitorque on the ground that the dispute was not arbitrable. This timely appeal followed.

II

We review de novo a grant of summary judgment. General Drivers, Warehousemen and Helpers Local Union No. 509 v. Ethyl Corp., 68 F.3d 80, 83 (4th Cir. 1995). An arbitration award may be overturned if it "violates well-settled and prevailing public policy, fails to draw its essence from the collective bargaining agreement or reflects the arbitrator's own notions of right and wrong." Mountaineer Gas Co. v. Oil, Chemical & Atomic Workers Int'l Union , 76 F.3d 606, 608 (4th Cir.), cert. denied, 117 S. Ct. 80 (1996).

III

IAM argues that the district court erred in holding that this dispute was not subject to arbitration. We affirm on an alternate ground. See Thigpen v. Roberts, 468 U.S. 27, 30 (1984).

A

A court will not usually set aside an arbitrator's award "[m]erely because [the] court finds that the arbitrator has seriously misconstrued a contract." Walker v. Consolidated Freightways, Inc., 930 F.2d 376, 381 (4th Cir. 1991) (citing United Paperworkers Int'l Union, AFL-CIO v. Misco, Inc., 484 U.S. 29, 36 (1987)). But where the language of a CBA is unequivocal, an arbitration award that modifies the contract language fails to draw its essence from the CBA and may be overturned by the courts. See id.

3

Limitorque contends that the 1995 CBA unequivocally does not contain the agreement requiring equal benefits for both hourly and salaried employees. By interpreting the 1995 CBA to include that provision, Limitorque continues, the arbitrator modified the 1995 CBA and his award should thus be overturned. We must therefore determine whether the arbitrator's award "ignore[d] the plain language of the contract." See Misco, 484 U.S. at 36.

The parties agree that the 1995 CBA has not been reduced to writing. Despite this lack of a writing, both parties agree that the 1995 CBA consists, at the minimum, of the most recent CBA (the 1992 CBA) plus the modifications set forth in the Final Offer. Limitorque contends that this is all that the 1995 CBA contains. IAM argues that the 1995 CBA also includes certain oral agreements that were not reduced to writing. Among those agreements, according to IAM, is an agreement requiring Limitorque to provide the same dental benefits to hourly employees as to salaried employees.

IAM's interpretation is contrary to rule 3 of the Negotiating Ground Rules. As noted above, rule 3 provided that"[t]here will be no tentative agreement reached on any issue not reduced to writing and signed by both parties." The oral agreement on the new dental plan was a "tentative"--i.e., preliminary--agreement. Because that agreement was not in writing, it had no force and could not be incorporated into the final agreement.

IAM argues further that Limitorque's practice shows that the 1995 CBA contains provisions orally agreed upon by the parties during the contract negotiations. This argument, though, is precluded by the CBA itself, which provides that "[t]he waiver of, or any breach of conditions of this Agreement, by either party, shall not constitute a precedent in the future enforcement of all the terms and conditions herein." Limitorque's honoring of any other oral agreements therefore lacks precedential value.

B

Having determined that the 1995 CBA consists only of the 1992 CBA as modified by the Final Offer, we must next determine whether

the 1995 CBA contains the provision requiring parity of dental bene-fits.

Neither the 1992 CBA nor the Final Offer contains the promises made by the Limitorque negotiator on May 10 or 12. Similarly, the new Limitorque dental plan is mentioned in neither the 1992 CBA nor the Final Offer. Neither document requires that Limitorque provide the same dental plans to both hourly and salaried personnel. Instead, the 1992 CBA incorporated by reference the dental plan provided by Limitorque through its dental insurer before August 1995. Because the Final Offer does not alter the 1992 CBA in that regard, the 1995 CBA provides the same dental plan as provided under the 1992 CBA.

By interpreting the 1995 CBA to require parity of dental benefits between salaried and hourly employees, the arbitrator's award modified the unequivocal language of the 1995 CBA. The arbitrator's award thus failed to draw its essence from the CBA. See Walker, 930 F.2d at 381. The district court did not err in vacating the arbitration award.

IV

The judgment of the district court is affirmed. Because Limitorque did not oppose the arbitration award "without justification," IAM's request for attorneys' fees is denied. See United Food and Commercial Workers, Local 400 v. Marval Poultry Co., 876 F.2d 346, 350 (4th Cir. 1989).

AFFIRMED

5