404

PACE LOCAL UNION 1967,
Plaintiff—Appellant,

v.

CHAMPION INTERNATIONAL
CORPORATION, Hamilton
Mill, Defendant—Appellee.

No. 00–3599.

United States Court of Appeals,
Sixth Circuit.

April 18, 2001.

Before KENNEDY and
SUHRHEINRICH, Circuit Judges;
McKEAGUE, District Judge.*

PER CURIAM.

Plaintiff Pace Local Union 1967 (the "Union") appeals the dismissal of this action to enforce an arbitration award in a dispute over a collective bargaining agreement provision regarding lunch breaks. The Union argues that (1) the arbitration award entered by Edward P. Goggin should be enforced so as to require Defendant Champion International Corp. ("Champion") to maintain paid working lunch breaks, and (2) alternatively, the case should be remanded to the arbitrator for clarification of the award. We AFFIRM.

I.

In Spring 1996, Champion and the Union entered into "reconfiguration-restructuring" negotiations at Champion's mill in Hamilton, Ohio. Prior to these negotiations, Champion had provided employees with a paid, unworked lunch break. As a result of the negotiations, the paid, unworked lunch periods were eliminated in three departments: the Supercalendar Complex, the Rewinder Department; and the Embosser Department. However, Champion did not provide any additional compensation to the workers in these departments for the loss of their unworked lunches.

In July 1996, the Union filed grievances requesting that the employees in the three departments be compensated for their loss

---

* The Honorable David W. McKeague, United States District Judge for the Western District of Michigan, sitting by designation.

in accordance with the wage rates proposed by the Union during the rate setting meeting. The grievances alleged that the change from a "shutdown" lunch to a "continuous operation" lunch constituted a "substantial change in job content" within the meaning of Section 30.02 of the Collective Bargaining Agreement ("CBA"),[1] which provides that a substantial change in job content requires a new rate "in line with the existing rate structure."

The grievances went to arbitration. In February 1998 Arbitrator James Duff upheld the grievances and sustained the rates proposed by the Union. Thus, the employees were awarded a pay adjustment of ⅙th of each employee's hourly rate, in addition to back pay from the time the "shutdown" lunches were eliminated in 1996.

Champion complied with Duff's award, but determined thereafter that the cost of paying the higher rate for the continuous operation lunches was uneconomical in two of the three departments. Champion therefore reinstated the paid shutdown lunches in the Embosser and Rewinder departments, and returned the employees to the original rates that had been established in the CBA prior to the elimination of those lunches.

On July 8, 1998, the Union filed another grievance for the employees in the Embosser and Rewinder departments, complaining that Champion's actions in reinstating the shutdown lunches violated Arbitrator Duff's decision and Section 21.07 of the CBA, which provides that lunch time "shall

be changed only by mutual agreement ."[2] The Union sought "[t]o be made whole for any and all losses ."

The arbitration hearing for the 1998 grievance was held on August 31, 1999, before Arbitrator Edward P. Goggin. The Union argued that Arbitrator Duff's award did not give Champion the option of reinstating the shutdown lunches, and that because Champion had bargained to eliminate the shutdown lunches, it must also bargain to reinstate them. Champion countered that Duff's decision did not require retention of the continuous operation lunches, but only that Champion pay employees who were required to work through lunch. Arbitrator Goggin concluded that the change back from a continuous operation lunch to a shutdown lunch substantially changed job content, and that Champion had not obtained the "mutual agreement" of the Union as required by Section 21.07. Therefore, Goggin "sustained" the grievance. However, in determining the proper remedy, Goggin reasoned that "[a]lthough [Champion] violated the Agreement by failing to obtain the agreement of the Union under Section 21.07, pursuant to Section 30.02, [Champion] must '. . . set a rate for each job in line with existing rate structure.' " Goggin concluded that the rate for each changed job "would be the rate listed for the job in the 'Extension of the Agreement' which was in effect at the time" the lunch period was initially changed from a shutdown lunch to a continuous operation lunch. Thus, although Goggin sustained the griev-

---

**1.** Section 30.02 of the CBA states, in pertinent part:

If the Company . . . substantially changes the job content of an existing job . . . the Company shall set a rate for each job in line with the existing rate structure.

**2.** Section 21.07 of the CBA states, in pertinent part:

The Company and the Union agree that lunch time and break periods is[sic] paid time and must be taken on the Company premises. The present practice now prevailing in each department shall be changed only by mutual agreement.

ance on the issue of unilateral change without bargaining, he determined that no remedy was appropriate because Champion was already paying the proper rate.

The Union filed a Complaint in the United States District Court for the Southern District of Ohio, as provided in the CBA, seeking enforcement of Goggin's award under § 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185. The Union also sought attorney fees and expenses. The Union argued that Goggin's award established that Champion must pay employees in the Embosser and Rewinder departments an increased rate of pay, as determined by Arbitrator Duff. Alternatively, the Union requested that the case be remanded to Goggin for clarification of his award.

Champion moved for dismissal under Fed.R.Civ.P. 12(b)(6), asserting that Goggin did not award a remedy for Defendant's violation of Section 30.02 of the CBA because that provision contains its own remedy (a rate in line with the existing rate structure), with which Champion was already in compliance. Champion further argued that Goggin's award was not ambiguous and thus did not require remand.

The district court granted Champion's motion to dismiss, concluding that Goggin's award drew its essence from Section 30.02 of CBA, and was not ambiguous.

## II.

The Union asserts that Arbitrator Goggin's award required Champion to maintain the employees' pay at the rate established by Arbitrator Duff. Alternatively, the Union argues that Goggin's award is ambiguous and must be remanded to him for clarification.

The standard of review in arbitration cases is extremely narrow. *Anaconda Co. v. International Assoc. of Machinists & Aerospace Workers*, 693 F.2d 35, 36 (6th Cir.1982). Courts do not weigh the merits of grievances, balance equities, or search for language in written agreements that supports claims. *United Steelworkers of Am. v. American Mfg. Co.*, 363 U.S. 564, 568, 80 S.Ct. 1343, 4 L.Ed.2d 1403 (1960). Rather, courts are bound by an arbitrator's findings of fact and serve only as a mechanism to enforce arbitrator's awards. *International Bhd. of Electrical Workers, Local 429 v. Toshiba Am., Inc.*, 879 F.2d 208, 210 (6th Cir.1989). The arbitrator's award is affirmed if "it draws its essence from the collective bargaining agreement."[3] *Cement Divisions, National Gypsum Co. v. United Steelworkers of Am. ., Local 135*, 793 F.2d 759, 766 (6th Cir. 1986). So long as the arbitrator's interpretation of the contract and his award are arguably within the scope of his authority, the Court may not overturn the decision even if it "is convinced [the arbitrator] committed serious error." *United Paperworkers Int'l Union v. Misco, Inc.*, 484 U.S. 29, 38, 108 S.Ct. 364, 98 L.Ed.2d 286 (1987).

Specifically, the Union contends that its request "to be made whole" was under-

---

**3.** An award fails to draw its essence from the collective bargaining agreement in the following circumstances: (1) it conflicts with the express terms of the agreement, *Grand Rapids Die Casting Corp. v. Local Union No. 159, United Auto., Aerospace and Agric. Implement Workers of Am.*, 684 F.2d 413, 416 (6th Cir. 1982); (2) it adds requirements onto the grievance procedure that the agreement does not require, *Sears, Roebuck & Co. v. Teamsters Local Union No. 243*, 683 F.2d 154, 155 (6th Cir.1982); (3) the terms of the agreement do not rationally support the award, *Timken Co. v. United Steelworkers of Am.*, 482 F.2d 1012, 1015 (6th Cir.1973); or (4) it is based on general considerations of fairness rather than on the specific terms of the agreement, *United Auto., Aerospace and Agric. Implement Workers of Am. v. T.R.W., Inc.*, 402 F.2d 727, 731 (6th Cir.1968).

stood by all to mean that the employees were seeking to return to the rate of pay established by the Duff award. Because Goggin sustained the grievance, the Union argues that Goggin intended that the Duff award be reinstated. Champion disagrees, contending that a reinstatement of the Duff award would amount to a modification of Goggin's determination, not merely an enforcement of it.

We reject the Union's argument because Arbitrator Goggin's determination drew its essence from the CBA. Goggin concluded that Champion had violated Section 21.07 of the CBA by failing to obtain the Union's consent to return to the shutdown lunches. To that extent, the grievance was sustained. However, in fashioning a remedy, Goggin looked to Section 30.02, which he interpreted as containing its own remedy. Because Champion was already paying the employees a rate in line with the "existing rate structure," he concluded that no additional remedy was necessary. In other words, Goggin determined that the employees had already been "made whole," despite the loss of the 1/16th pay increase, because they were no longer working through their lunches. Therefore, it is plain that the award drew its essence from the CBA.

Further, the award was not so ambiguous as to justify remand. In determining whether an award is ambiguous, it should be read in conjunction with the arbitrator's opinion. *M & C Corp. v. Erwin Behr GmbH & Co., KG*, 143 F.3d 1033, 1038 (6th Cir.1998). Here, the parties seem to agree that Goggin's award could have been more clear. Specifically, the award reads:

> The grievance is sustained.
>
> However, the language of Section 30.02 specifies that the rate for the changed job must be in line with the existing rate structure.

(J.A. at 14.) In concluding that this award was not ambiguous, the district court noted that immediately after sustaining the grievance, the award uses the term "however," and then restates that Section 30.02 provides its own remedy in that any substantial job change requires a rate in line with the existing rate structure. Additionally, the court turned to Goggin's written opinion, which indicates that

> the rate for each changed job would be the rate listed for the job in the "Extension of the Agreement" which was in effect at the time there was a "substantial change in job content." In this instance, the "substantial change in job content" was a reduction in the time worked. And, the "substantial change in job content" places the employees in the Embossers and Rewinders Departments in the same position they were in prior to the change which was made to reflect the "substantial changes in job content" which were made in 1996. Therefore, there is a rate for each changed job, which is the rate which had been negotiated by the parties for each job, before the previous "substantial changes in job content" were made.

(J.A. at 13.) Therefore, when the award is read in conjunction with the opinion, it is clear that Goggin did not intend to reinstate the Duff award, but to return the employees to the shutdown lunch rates that they had previously negotiated.

### III.

Therefore, for the foregoing reasons, we AFFIRM the judgment of the district court.